## M. Gerhard's Adm'r v. W. Neese.

1. The case of House v. Soder, *ante* p. 629, cited, and the rulings therein approved, to the effect that a common carrier of cotton from the interior of Texas to points on the Texas side of the Rio Grande, during the civil war, is not precluded from recovering freight-money therefor, by reason of any illegality in his contract, or by reason of the default of the owner in failing to have a person at the place of consignment authorized to receive the cotton—in consequence of which default the cotton was never delivered by the carrier, but was seized by the military authorities of the United States, and lost to the owner.

2. In a suit for freight-money on cotton hauled to Brownsville during the civil war, the defendant, in order to raise a presumption that the plaintiff was engaged in an illegal exportation of the cotton, was allowed by the court below to prove a custom then prevalent of running cotton from Brownsville across the Rio Grande into Mexico. *Held*, that this was erroneous ; fraud cannot be presumed, nor be proved by evidence of a custom.

3. A common carrier is bound to reasonable expedition, in the absence of any stipulation as to time. Unreasonable delay renders him liable for actual and legitimate damages, resulting therefrom, but not for hypothetical damages, nor for any supposed loss incurred in an illegal traffic.

4. If an owner of cotton, during the civil war, forwarded it by a common carrier to the Rio Grande, for the illegal purpose of evading the blockade and revenue laws of the United States, and of exporting the cotton to Mexico, and attempted to hurry the carrier along so as to escape the United States authorities and effect his purpose, the carrier was under no obligation to make dispatch in aid of the owner's objects.

Appeal from Fayette. Tried below before the Hon. I. B. McFarland.

The opinion of the court indicates the material facts.

*Moore & Ledbetter*, for the appellant.

No brief for the appellee has reached the hands of the reporter.

Ogden, J. The facts of this case are in many respects quite

similar to those in House v. Soder, just decided by this court, and the same principles of law must govern both.

The appellant's intestate contracted in 1865, to haul from Fayette county, Texas, to Brownsville, or Rio Grande City, Texas, for appellee, a certain quantity of cotton for a stipulated price, and to deliver the same to the order of J. W. Robinson. The cotton was hauled to Brownsville in compliance with the terms of the contract, but, when it arrived there, neither J. W. Robinson nor his order could be found, and the cotton could not be delivered according to the contract, because of the default of appellee to have some person there to receive the cotton on its arrival. There certainly was no illegality in the contract for hauling, since it had no connection whatever with an attempted evasion of the revenue laws of the United States, or with an attempt to run the blockade.

Appellant's contract terminated at Brownsville, and there he had a right to demand his freight-money. What might have been the object of the owner in sending cotton to Brownsville, was no matter of concern or business of the carrier, who could not be chargeable with the fraudulent intent of the owner, unless he was proven to be a participator in the fraud. (Armstrong v. Toler, 11 Wheaton's U. S. R., 258.) Fraud cannot be presumed, nor proven by evidence of a custom, and therefore we think the court erred in permitting proof to go to the jury of a custom of running cotton from Brownsville into Mexico, in order to raise a presumption that appellant's intestate was engaged in a fraudulent transaction, and in violation of the laws of the United States. But in this case it was clearly proven that appellant's intestate could not have had any knowledge of the fraudulent intent of appellee, since the agent Robinson testified that he had authority to sell the cotton in Brownsville, or to cross it over into Mexico, as he deemed advisable.

The contract for hauling was a legitimate one, so far as the common carrier was concerned, whatever might have been the fraudulent or illegal intent of the owner of the cotton; and therefore the charge of the court, instructing the jury to the

contrary, was error, and will require a reversal of the judgment.

Another question may be presented on a new trial, which it may not be improper here to notice. Did the appellant's intestate use reasonable diligence in carrying and delivering the cotton according to his contract; and if not, what damages did the owner suffer in consequence of the unreasonable delay in the hauling? A common carrier is "bound to reasonable expedi- " tion, if no particular time be fixed upon." (Angell on Carriers, 283, and authorities there cited.) He is not bound to great haste or expedition, and only to reasonable diligence. But when a common carrier is guilty of unreasonable delay in the performance of his contract, he becomes liable for all the actual and legitimate damages resulting from such unnecessary delay. But he is not liable for any hypothetical or chimerical damages, nor is he liable for any supposed loss which might have resulted to an immoral or illegal traffic. And therefore, if the owner of the cotton was attempting to hurry the carrier forward in order that he might have an opportunity to smuggle the same across into Mexico, in violation of the revenue laws of the United States, before the approach of the Federal authorities, the carrier was under no obligation to make haste on that account, nor was he under any legal obligation to attempt to evade those authorities when they made their approach; and if the cotton was seized on account of the attempted fraud of the owner, or his agent, the innocent carrier cannot be held liable.

For the reasons here and in House v. Soder stated, the judgment is reversed and the cause remanded.

Reversed and remanded.